IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO.: _____

| | |
|---|---|
| **SEAPRAY CORPORATION,** | )<br>) |
| **Plaintiff,** | )<br>)<br>) |
| v. | )<br>) |
| **MANN+HUMMEL FILTRATION TECHNOLOGY US LLC, MANN+HUMMEL FILTRATION TECHNOLOGY INTERNATIONAL HOLDINGS CORP., AND MANN+HUMMEL FILTRATION TECHNOLOGY VENEZUELA, C.A.,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| **Defendants.** | |

**NOW COMES** Plaintiff, Seapray Corporation ("Plaintiff"), by and through its undersigned counsel, and for its Complaint against MANN+HUMMEL Filtration Technology US LLC ("MH USA"), MANN+HUMMEL Filtration Technology International Holdings Corp. ("MH International"), and MANN+HUMMEL Filtration Technology Venezuela, C.A. ("MH Venezuela") (collectively referred to as "Defendants MH"), states and alleges as follows:

## SUMMARY OF THE ACTION

1.  This matter involves a large company, MH USA, fraudulently using its subsidiary and/or related companies, MH International and MH Venezuela, as its alter egos to obtain goods, equipment, services and loans from Plaintiff Seapray Corporation, only to later refuse to pay its debts to Plaintiff, despite admitted defaults on contractual obligations.

2.  MH USA designs and manufactures component parts for customers in the automotive industry – most notably, high-performance automotive filters for cars, engines, and commercial vehicles. MH USA manufactures certain automotive and industrial parts—oil filters, fuel filters, hydraulic filters and coolant filters—for sale to various customers in the original

1

equipment and after-market filter businesses—including distributors, retail chains, repair shops, and automotive companies.

3. Upon information and belief, MH International is wholly (100%) owned and controlled by MH USA, and also as evidenced in MH International's Stockholder's January 7, 2020, meeting notes. A true and correct copy of MH International's Shareholder's January 7, 2020 meeting notes is attached within **Composite Exhibit "A"** and incorporated herein by reference.

4. Upon information and belief, MH Venezuela is wholly (100%) owned and controlled by MH International and MH USA. *See* copy of MH Venezuela's Shareholder's February 26, 2018, meeting notes and the affidavit of the Finance and Administration Manager Jose Raul Conde, are attached hereto as **Exhibit "B"** and **Exhibit "C"** respectively, and incorporated herein by reference.

5. MH USA, by and through its directors, including, but not limited to, Rodrigo Reyes, the President of MH USA and MH International, and David Kline, the Treasurer of MH International, exercised complete and actual control over MH Venezuela, including, but not limited to, MH Venezuela's legal, administrative, operational, financial, and business decisions. *See* Exhibit "C."

6. Defendant MH owes Plaintiff monies for steel that Plaintiff sold and delivered to MH Venezuela and for loans Plaintiff provided to Defendants MH.

7. These loans were structured to provide the necessary funds to MH Venezuela to pay international suppliers.

8. Upon information and belief, the purchase orders for the steel that was purchased from Plaintiff by MH Venezuela were approved by MH USA prior to the purchase being placed.

9. The last payment that Plaintiff received from MH Venezuela was on or about January 31, 2022.

10. Plaintiff issued four subsequent invoices on February 2, 2022, that remain unpaid.

11. On February 3, 2022, MH Venezuela formally acknowledged and ratified that MH Venezuela owed Plaintiff the sum of $1,906,082.96 as of February 2, 2022, for the products that Plaintiff had sold and delivered to MH Venezuela and for the money it had loaned MH Venezuela, and promised to pay same. A true and correct copy of MH Venezuela's February 3, 2022, ratification is attached hereto as **Exhibit "D"** and incorporated herein by reference.

12. Upon information and belief, MH USA reviewed and approved MH Venezuela's action in acknowledging and ratifying the sum owed to Plaintiff. *See generally* Exhibit "C."

13. Shortly thereafter, on February 18, 2022, in Gastonia, North Carolina, Rodrigo Reyes President of MH USA and MH International, authorized Juan Carlos Varela ("Varela"), a Venezuelan Lawyer, to represent MH International, the sole stockholder of MH Venezuela, in ordinary and/or extraordinary Shareholders' Meetings for MH Venezuela. *See* Composite Exhibit "A," which is incorporated herein by reference.

14. By information and belief, on April 4, 2022, MH Venezuela held a Shareholder's meeting in which Varela authorized the sale or disposition of assets and/or movable and immovable property owned by MH Venezuela. Part of MH Venezuela's property that would be sold and/or disposed of was MH Venezuela's factory (the "Factory").

15. In August 2022, Plaintiff, through its officer Jose Larrea ("Mr. Larrea"), began discussing other resolutions for the debts that remained owed to Plaintiff with Senior Manager, Real Estate & Facilities Americas of MH USA Todd Brosko ("Brosko"). A true and correct copy

of Mr. Larrea's and Brosko's August 2022 written communications are attached hereto as **Composite Exhibit "E"**, and incorporated herein by reference.

16.     Upon information and belief, while Defendants MH have refused to pay Plaintiff, MH USA has personally enriched itself by, among other things, taking and selling the filters that were manufactured by MH Venezuela, using the steel that was supplied by Plaintiff, but failing to pay Plaintiff, making MH USA's acts particularly egregious. *See* Exhibit "C."

17.     As such, Plaintiff seeks to make Defendants MH responsible for the long outstanding debts that it is owed. In addition to the outstanding invoices for voluminous product that it supplied MH Venezuela and loans it issued to MH Venezuela, which remain in default, Plaintiff seeks to hold Defendants MH, liable for the role in the scheme they created to continue to operate the Factory in Venezuela, while taking profit for themselves and avoid paying its debts to Plaintiff.

18.     To date, Defendants MH owe Plaintiff at least $1,906,082.96, plus interest, fees, costs, expenses, attorneys' fees, and other costs of collection.

## THE PARTIES

19.     Plaintiff Seapray Corporation is a Florida corporation, with its principal place of business located in Miami, Florida.

20.     MANN+HUMMEL Filtration Technology US LLC is a Delaware limited liability company, with its principal place of business located in Gastonia, North Carolina. MH USA is the parent company, and controls MH International and MH Venezuela.

21.     MANN+HUMMEL International Holdings Corp. is a Delaware limited liability company, with its principal place of business located in Gastonia, North Carolina.

22.     MANN+HUMMEL Filtration Technology Venezuela, C.A. is a Venezuelan entity.

23. MH International and MH Venezuela are mere instrumentalities or alter-egos of MH USA, and the funds of MH International, MH Venezuela and MH USA are comingled. *See* Exhibit "C". As a result, and as detailed further below, MH USA, MH Venezuela, and MH International are jointly and severally liable to Plaintiff for MH Venezuela's failure to pay Plaintiff, including and not limited to the breach of its contractual obligations to Plaintiff.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.

25. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

26. At all times relevant, MH Venezuela and MH International are the subsidiaries and/or related companies, and alter egos of MH USA.

27. MH USA designs and manufactures component parts, including, but not limited to, automotive filters.

28. Upon information and belief, in May 2016, MH USA acquired the global filtration operations of Affinia Group, which is commonly known to have manufactured filters for WIX and FILTRON brands. During this acquisition, MH USA acquired Affinia Group's factory in Venezuela, and formed MH Venezuela, with the primary purpose of funding, developing, and manufacturing filters for MH USA.

29. Upon information and belief, MH USA used its subsidiary, and/or related company, and alter ego entity, MH International, to purchase, operate, and fully control MH Venezuela.

30. Upon information and belief, MH International and MH Venezuela were controlled by MH USA's directors and managers. Further, upon information and belief, MH USA used MH

International and MH Venezuela to funnel assets and profits into itself, and commingled funds from these entities. *See* Exhibit "C."

31. Plaintiff sells steel, specifically "cut steel" that Plaintiff purchases in the United States and exports to Venezuela. At MH USA's request, Plaintiff began purchasing cut steel from Randall Metals that is located in North Carolina and imported it to MH Venezuela.

32. For various years, Plaintiff sold and delivered "cut steel" to MH USA's alter ego, MH Venezuela that Defendants MH used to manufacture its products (i.e. its filters). In fact, part of the goods that were manufactured by Defendants MH in its Venezuelan factory, were then exported to MH USA in the United States for distribution. *See* Exhibit "C."

33. Plaintiff submitted invoices for the cut steel that it sold to Defendants MH. Each invoice includes terms of sale clearly stating that "[u]nless otherwise agreed in writing, Customer will pay for the Goods on the basis of net cash 30 days from the date of invoice" and "any unpaid account will bear interest at the rate of 1.5% per month from and after the date payment is due."

34. As a result of MH Venezuela's claim that to sustain its growth and business it needed additional capital to make payment to its international suppliers, Plaintiff provided loans to MH Venezuela, including a loan in the amount of $88,932.14 and $33,504.24, respectively. MH Venezuela was required to pay these loans back to Plaintiff with a 6.25% of interest on any remaining balance every six (6) months until said loans were paid in full.

35. On February 3, 2022, Defendants MH formally acknowledged that MH Venezuela owed Plaintiff the amount of $1,906,082.96, as of February 2, 2022, for the product that Plaintiff had sold and delivered to MH Venezuela and for the money it had loaned Defendants MH, and promised to pay same. *See* Exhibit "D."

36. On February 18, 2022, Defendants MH executed a Power of Attorney in Gastonia, NC, indicating that Rodrigo Reyes, the President of MH USA and MH International, authorizing Defendants MH's legal representative in Venezuela, Varela, to (1) remove the board members of MH Venezuela, which included David Kline – who, upon information and belief, is also a director and board member for MH International and MH USA; (2) manage the disposal of MH Venezuela's assets, shares, and rights; (3) make decisions as to the sale of property –both movable and/or immovable – that was owned by MH Venezuela; and (4) dissolve/liquidate MH Venezuela. *See* Composite Exhibit "A."

37. Shortly thereafter, MH Venezuela filed public documents in Venezuela indicating that on April 4, 2022, MH Venezuela held a Shareholder's meeting, in which Varela, authorized sale or disposition of assets and/or movable and immovable property owned by MH Venezuela, in an effort to begin dissolving the company. Part of MH Venezuela's property that would be sold and/or disposed of was the Factory. *See* Composite Exhibit "A."

38. The last payment that Plaintiff received from Defendants MH for the debt that was owed to it by Defendants MH was made on or about January 31, 2022.

39. In August 2022, as a result of the debt that remained owed to Plaintiff, Mr. Larrea – on behalf of Plaintiff, began discussing other means to satisfy the debt that was owed to Plaintiff by Defendants MH. *See* Composite Exhibit "E.".

40. During negotiations, Defendants MH presented the idea of selling the Venezuelan factory at a "reduced" rate to Plaintiff to satisfy the outstanding debt. Of note, directors and officers of MH USA, including Brosko, a senior manager for MH USA, primarily handled the negotiations amongst Plaintiff and MH USA for the purchase of the factory that was located in Venezuela, which was legally owned by MH Venezuela. President of MH USA and MH International Rodrigo

7

Reyes was included as a participant of these negotiations within these communications. *See* Composite Exhibit "E."

41. On August 9, 2022, Brosko sent an email to Mr. Larrea, which stated "[t]hank you for your interest in purchasing *our* Real Estate Property in Venezuela. Please see the attached *Mann+Hummel* counter offer for your review and consideration. Please advise upon your approval of *our* offer." *See* Composite Exhibit "E." (emphasis added). Brosko's August 9, 2022, then enclosed a formal letter from Brosko, on MH USA's letterhead, which provided Plaintiff with a proposed counteroffer for the sale of the Venezuelan factory on MH USA's behalf. *Id*.

42. Brosko's email dated August 9, 2022, also acknowledges the debt that is owed by MH Venezuela to Plaintiff and attempts to negotiate the amount of the debt that is owed by Defendants MH to Plaintiff by requesting a 25% reduction of the amount that is owed to Plaintiff. *See* Composite Exhibit "E."

43. The sale of the Factory did not come to fruition, and the debt to Plaintiff remains unpaid or otherwise unsatisfied.

44. As of February 2, 2022, MH Venezuela owes Plaintiff at least $1,783,646.58 for cut steel that Plaintiff had supplied to MH Venezuela over the years, and at least $122,436.38 for loans it issued to MH Venezuela, which remain unpaid.

45. While Defendants MH have acknowledged that the debts remain unpaid, Defendants MH refuse to make payment and Plaintiff has been significantly damaged.

### FIRST CAUSE OF ACTION
### (*BREACH OF CONTRACT*)

46. Plaintiff repeats and alleges the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff and MH Venezuela entered into a series of valid and enforceable agreements pursuant to which Plaintiff would deliver to MH Venezuela cut steel and MH Venezuela would pay for the same (the "Purchase Agreements").

48. Pursuant to the Purchase Agreements, MH Venezuela was obligated to pay for the materials sold to it by Plaintiff within thirty (30) days of its receipt of an invoice for the same.

49. The Purchase Agreements further provided that, upon MH Venezuela's failure to make payment within thirty (30) days of its receipt of an invoice, MH Venezuela would be in default, and the outstanding balance would bear interest at the rate of 1.5% per month until the balance was paid in full.

50. On or about March 3, 2022, MH Venezuela defaulted on the Purchase Agreements by failing to make payment when due.

51. The Purchase Agreements state that, "the validity, construction, and interpretation of this contract and the rights and duties of the parties hereto shall be governed by the laws of Florida without reference to Florida's choice of law rules."

52. Additionally, Plaintiff and MH Venezuela entered into an agreement pursuant to which Plaintiff agreed to loan MH Venezuela the principal sum of $122,436.38, and MH Venezuela agreed to repay the same with the interest at the rate of 6.25% (the "Loan Agreements").

53. On or about March 3, 2022, MH Venezuela defaulted on the Loan Agreements by failing to make payment when due.

54. Plaintiff has been damaged by MH Venezuela's default under the Purchase Agreements and Loan Agreements, and is entitled to recover damages in the principal amount of $1,906,082.96, plus pre-judgment interest at the contract rate from the date of breach until judgment and post-judgment interest at the maximum legal rate.

55. All conditions precedent to Plaintiff's right to enforce its remedies under the Purchase Agreements and Loan Agreements, if any, have been satisfied.

56. At the time that Plaintiff is filing this Complaint, Plaintiff is owed at least $1,906,082.96, for products it sold and delivered to MH Venezuela and for loans it issued to MH Venezuela. *See* Exhibit "D."

57. As a result of MH Venezuela's default, Plaintiff has been damaged in an amount of no less than $1,906,082.96 principal and premium amounts due, plus interest, fees, costs, expenses, attorneys' fees, and any other costs of collection.

## SECOND CAUSE OF ACTION
### (*PIERCING THE CORPORATE VEIL*)

58. Plaintiff repeats and alleges the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

59. MH Venezuela and MH International are the alter-egos of MH USA, and exist solely as instrumentalities of MH USA.

60. Upon information and belief, MH USA required MH Venezuela and its employees to participate in weekly meetings through virtual platforms, in which MH USA made executive decisions and approved MH Venezuela's business dealings, issues surrounding staff and employee management, finance practices, and purchasing of materials from suppliers, including Plaintiff.

61. MH USA, MH International, and MH Venezuela disregarded corporate formalities as MH USA was directly involved in, and had to authorize all decisions for MH Venezuela that were related to the company's legal, administrative, and operational matters, finances, dealings, business objectives, business practices, business decisions and plans of MH Venezuela, to such an extent that MH Venezuela and MH International, respectively, had no separate mind, will or existence of its own. *See* Exhibit "C."

62. MH USA also had complete domination and control over MH Venezuela and MH International, as, among other things described herein, MH USA had complete control over MH Venezuela's and MH International's respective finances including bank accounts, assets, business bylaws, business policies and guidelines, capital, profits, and day-to-day operations. *See* Exhibit "C."

63. Upon information and belief, MH USA, through MH International, would siphon MH Venezuela's funds, including any capital gain and profits, to enrich MH USA and render MH Venezuela insolvent.

64. Defendants MH have also blurred lines of their corporate forms by, amongst other things, using MH USA, and its managers/directors (i.e. Brosko) to negotiate the sale of the Venezuelan factory with Plaintiff, in an attempt to make Plaintiff whole, pursuant to the debt that was owed to Plaintiff by Defendants MH. *See* Composite Exhibit "E."

65. Because of these wrongful acts, MH Venezuela is left without any assets or ability to pay Plaintiff the amount it owes it for the supplies it delivered and loans it provided to MH Venezuela, which presently total approximately $1,906,082.96. *See* Exhibit "D."

66. Because MH Venezuela and MH International are mere mechanism by which MH USA can funnel money from MH Venezuela and MH International to MH USA, MH USA is liable to Plaintiff for MH Venezuela's breach and defaults on the pending debt owed to Plaintiff in an amount to be proven at trial, but no less than the $1,906,082.96 principal and premium amounts due, plus interest, fees, costs, expenses, attorneys' fees, and other costs of collection.

## THIRD CAUSE OF ACTION
### (*BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING*)

67. Plaintiff repeats and alleges the allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

11

68. Implicit in every contract is a promise of good faith and fair dealing that is breached when a party acts in a manner that – although not expressly forbidden by any contractual provision – would deprive the other party from receiving the benefits under the agreement.

69. The duty to act in good faith encompasses any promises a reasonable person in the position of the promissee would be justified in understanding were included.

70. MH USA, used Plaintiff to purchase and import the "cut steel" needed for their products to MH Venezuela. MH Venezuela would then manufacture the product (i.e. filters) and export it to MH USA to be sold. MH USA would then sell the product, and make profits. However, suppliers like Plaintiff were never reimbursed in full for the supplies (i.e. cut steel) that was sold and exported to MH Venezuela. MH USA ultimately enriched itself with business profits selling the products that were manufactured by MH Venezuela, while depriving MH Venezuela the funds with which it could satisfy its obligations to Plaintiff.

71. MH USA's improper actions frustrated Plaintiff's ability to receive the benefits promised under the contracts between Plaintiff and MH Venezuela.

72. Together with MH Venezuela's other breaches of its contractual obligations, MH Venezuela has been rendered unable to pay amounts now due to Plaintiff.

73. Plaintiff justifiably believed that Defendants MH would not take actions that would deprive MH Venezuela of assets needed to satisfy its obligations to Plaintiff. Thus, Defendants MH's actions constitute a breach of the implied covenant of good faith and fair dealing.

74. Defendants MH's breaches of the implied covenant of good faith and fair dealing have damaged Plaintiff in an amount to be proven at trial, but no less than the $1,906,082.96 principal and premium amounts due, plus interest, fees, costs, expenses, attorneys' fees, and other costs of collection.

## FOURTH CAUSE OF ACTION
### (*ACCOUNT STATED*)

75. Plaintiff repeats and alleges the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

76. Plaintiff and MH Venezuela had transactions for cut steel, the balance of which is in the amount of $1,783,646.58, plus prejudgment interest and costs.

77. Plaintiff submitted a statement of MH Venezuela's account balance to MH Venezuela for payment each time that Plaintiff delivered the goods sold. Moreover, Plaintiff submitted an account balance statement to MH Venezuela on February 2, 2022.

78. MH Venezuela admitted the correctness of the statement of account balance on February 3, 2022, when it executed the account balance statement that Plaintiff provided. *See* Exhibit "D."

79. The certain balance is correct and due. MH Venezuela has never raised objection to the balance due, and has made both an express and implicit promise to pay that balance. Moreover, MH USA has acknowledged that the balance is correct and due, has not objected to the amount due, and has made an implicit promise to pay that balance.

80. To date, Defendants MH have failed and/or refused to pay Plaintiff these past due monies.

## FIFTH CAUSE OF ACTION
### (*UNJUST ENRICHMENT*)

81. Plaintiff repeats and alleges the allegations contained in paragraph 1 through 45 and paragraphs 58 through 80 as if fully set forth herein.

82. Plaintiff sold and delivered cut steel to MH Venezuela on numerous occasions, and loaned MH Venezuela money.

83. The cut steel that was sold and delivered to MH Venezuela was valued at approximately $2.29 dollars per kg. Throughout the years, Plaintiff has sold and delivered MH Venezuela approximately 1,057,000 kg units of cut steel.

84. Plaintiff also has loaned MH Venezuela approximately $122,436.38. MH Venezuela was required to repay Plaintiff the loan amount plus 6.25% interest of any balance owed every six months.

85. To date, Defendants MH have failed to pay Plaintiff for the cut steel and for the monies loaned, in an amount of $1,906,082.96.

86. At all times relevant, Plaintiff had a reasonable expectation to be paid.

87. Circumstances were such that MH Venezuela knew or reasonably should have known that Plaintiff would expect payment to be forthcoming from MH Venezuela for the product and/or monies furnished for the benefit accepted and conferred on MH Venezuela.

88. Defendants MH have accepted, used, enjoyed and benefited from the product that was delivered and the loans that were rendered. The benefit of these services and monies loaned and monies withheld constitutes unjust enrichment.

89. Defendants MH have refused and continue to refuse to pay the value of the product provided, monies loaned and monies withheld. It is inequitable for Defendants MH to retain the benefits without paying the value thereof to Plaintiff.

## SIXTH CAUSE OF ACTION
### (*MONEY LENT*)

90. Plaintiff repeats and alleges the allegations contained in Paragraph 1 through 89 as if fully set forth herein.

91. MH Venezuela owes Plaintiff $122,436.38 Dollars, for loans that Plaintiff issued to MH Venezuela for among other things, its use in funding its operation, plus interest.

## SEVENTH CAUSE OF ACTION
### (*CONSTRUCTIVE TRUST*)

92. Plaintiff repeats and alleges the allegations contained within Paragraphs 1 through 91 as if fully set forth herein.

93. At the time Plaintiff and MH Venezuela entered into an agreement, a relationship of trust existed between and amongst them.

94. MH Venezuela took advantage of its relationship of trust with Plaintiff through actual fraud, or by abuse of confidence, reposed and accepted, such that the MH Venezuela gained something for itself which in equity and good conscience they should not be permitted to hold.

95. MH Venezuela has wrongfully misappropriated Plaintiff's monies due and owing to Plaintiff, and are utilizing said property for their own benefit and/or use.

96. MH Venezuela has exercised and taken dominion, control and custody over the personal property to the exclusion of Plaintiff and has deprived Plaintiff of, among other things, access to the proceeds of the sale of its assets.

97. It is unjust for Defendants MH to be allowed to retain the proceeds from the sale of its assets, including real and personal property as MH Venezuela acquired same deceitfully and in an otherwise wrongful manner.

98. Unless a constructive trust is imposed over the proceeds of the sale of the personal and real property, in the approximate amount at least $1,906,082.96 Dollars; and over proceeds generated by any property to which the proceeds are applied or bank accounts in which the proceeds are kept, Defendants MH would be unjustly enriched at the expense of Plaintiff.

99. A constructive trust is necessary as there is no other adequate and speedy remedy at law that can prevent Defendants MH from removing or depleting the aforesaid property once and for all.

**WHEREFORE**, Plaintiff Seapray Corporation demands judgment against Defendants MANN+HUMMEL Filtration Technology US LLC, MANN+HUMMEL Filtration Technology International Holdings Corp., and MANN+HUMMEL Filtration Technology Venezuela, C.A. as follows:

1. For damages in the amount of at least $1,906,082.96 – the principal and premium amounts due, plus punitive damages, interest, fees, costs, expenses, attorneys' fees, and other costs of collection;

2. A constructive trust on all monies dispersed or to be dispersed from the sale of the real or personal property from the sale or transferred into any bank account or other tangible or intangible asset and any sums as may be found to have been wrongfully taken from the Plaintiff;

3. Enter final judgment in Plaintiff's favor and against Defendants MH for monetary damages, including, but not limited to, all amounts necessary to compensate Plaintiff for Defendants MH's wrongful activities, and any and all damages as well as reasonable attorneys' fees and costs and pre - and post-judgment interest;

4. Enter final judgment in Plaintiff's favor and against Defendants MH for punitive or exemplary damages and pre - and post-judgment interest for Defendants MH's willful and malicious conduct; and

5. That Plaintiff have such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.

[*Signature Page to Follow*]

This the 11th day of December, 2024.

        **MARTINEAU KING PLLC**

        */s/ Natasha M. Durkee*
        Natasha M. Durkee, Esq. (N.C. Bar No.: 55258)
        P.O. Box 24168
        Charlotte, NC 28217
        Phone: (704) 980-0721
        Facsimile: (704) 247-8582
        ndurkee@martineauking.com
        *Attorney for Plaintiff*

        **ROIG LAWYERS**
        Nelson C. Bellido, Esq. (Florida Bar No.: 974048)
        201 S. Biscayne Blvd., 28th Floor
        Miami, Florida 33131
        Phone: (305) 405-0997
        Facsimile: (305) 405-1022
        Email: nbellido@roiglawyers.com
        *Attorney for Plaintiff*
        *(Pending Pro Hac Vice Admission)*